## KANSAS CITY SOUTHERN RY. CO. v. McDANIEL.

### No. 12278.

Circuit Court of Appeals, Eighth Circuit.

Oct. 28, 1942.

Joseph R. Brown, of Fort Smith, Ark., for appellant.

J. F. Quillin, of Mena, Ark. (George R. Steel and George E. Steel, both of Nashville, Ark., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury against the appellant railroad company, referred to hereinafter as the defendant, for $750 damages for the death of Chloe June McDaniel, a child about three years of age. Her death was the result of the alleged negligence of defendant in maintaining on its right of way a stack of poles constituting an attractive nuisance.

The suit was brought in the state court by plaintiff as administrator of deceased's estate against the defendant Railway Company, against Joslyn Manufacturing and Supply Company (hereinafter called the Supply Company), and against two of its employees. The case was removed to the district court by the defendant on the ground of diversity of citizenship and separable controversy. Thereafter plaintiff dismissed against the Supply Company and

its employees and entered into covenants with them not to sue, in consideration of which he received $1,000 from the Supply Company and $100 from the employees.

In his petition plaintiff alleged that at the city of Mena, Arkansas, the defendant maintained a place on its right of way adjacent to a thickly populated portion of the city and about one-fourth of a mile from its passenger station, for stacking poles for the purpose of transportation over its lines; that with the consent and approval of defendant the Supply Company and its servants placed upon said site a large stack of pine poles for shipment; that the stack of poles was not staked, tied or enclosed; that with the knowledge of defendant children were accustomed to congregate and play at said place; that the place was dangerous, was attractive to children, and that with knowledge of the situation defendant took no measures for their protection; that Chloe June Mc-Daniel lived near the place and while at play, having been attracted there by the stack of poles, and while climbing upon the same, a pole rolled off the stack upon her, causing her death. It was alleged that the defendant negligently permitted the attractive and dangerous condition to continue after it knew or by the exercise of care could have known of such condition.

The defendant denied the allegations of the petition, alleged that the death of the child was due solely to the negligence of plaintiff, father of the child, in permitting her to trespass upon the land, and "that this suit was originally brought against the said Joslyn Manufacturing and Supply Company but thereafter the said Manufacturing and Supply Company made a settlement with plaintiff and the suit was dismissed as to it in consideration of plaintiff giving said Manufacturing and Supply Company a covenant not to sue. Defendant railway company pleads said covenant not to sue as a satisfaction of any claim plaintiff might attempt to set up against defendant railway company, and alleges that the giving of said covenant not to sue is a complete bar of plaintiff's attempt to sue defendant railway company."

Upon the trial defendant's motion for a directed verdict on the ground that plaintiff had failed to establish a cause of action was overruled. The case was submitted to the jury by instructions to which no exception is taken in this court, upon the sole ground of the negligent maintenance of an attractive nuisance. After judgment was entered defendant moved for an order satisfying the judgment on the ground that it was entitled to such order under Act 315, Arkansas Session Laws 1941, because in consideration of $1,100 plaintiff had released its joint tort-feasors, the Supply Company and its employees. The motion was overruled.

The defendant seeks reversal on the grounds (1) that the court erred in overruling defendant's motion for a directed verdict because (a) a stack of poles is not as a matter of law an attractive nuisance and because (b) the poles were placed upon the right of way by, and were owned and under the control of, Joslyn Manufacturing and Supply Company, which alone was responsible to plaintiff; and (2) that the court erred in overruling defendant's motion to satisfy the judgment against it because plaintiff had released the Supply Company and its employees, joint tort-feasors, in consideration of covenants not to sue them.

The issues are controlled by the laws of Arkansas. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The contention that a stack of poles is not an attractive nuisance as a matter of law is without merit. The Supreme Court of Arkansas has uniformly held that whether a dangerous instrumentality constitutes an attractive nuisance is a question for the jury. Arkansas Power & Light Co. v. Kilpatrick, 185 Ark. 678, 49 S.W.2d 353, 356; Nashville Lumber Co. v. Busbee, 100 Ark. 76, 139 S.W. 301, 38 L.R.A.,N.S., 754; St. Louis, I. M. & S. Ry. Co. v. Waggoner, 112 Ark. 593, 166 S.W. 948, 52 L. R.A.,N.S., 181; Central Coal & Coke Co. v. Porter, 170 Ark. 498, 280 S.W. 12; Brinkley Car Works & Mfg. Co. v. Cooper, 75 Ark. 325, 87 S.W. 645; Arkansas Valley Trust Co. v. McIlroy, 97 Ark. 160, 133 S. W. 816, 31 L.R.A.,N.S., 1020; Valley Planing Mill v. McDaniel, 119 Ark. 139, 170 S.W. 994; Foster v. Lusk et al., 129 Ark. 1, 194 S.W. 855.

The evidence under the Arkansas law presented a jury question. It is shown that the deceased with a companion was playing upon and about a stack of pine poles on the right of way of the defendant when a pole rolled off the pile and injured her so that she died within a short time. The poles weighed about 500 pounds

each, were 30 feet in length, about 6 inches in diameter at the top and about 10 inches at the base. The stacks were five or six feet high. They were dangerous to children. Children played about them, and were frequently seen there by various witnesses. The stacks were not fenced; no guard was kept there; and no effective precautions were taken to prevent injury to the children. The fact that the stacks of poles did attract children to the stack yards to play and that the stacks were dangerous is undisputed.

On the issue of control the court instructed the jury that in order to find for the plaintiff it was necessary to "find from a preponderance of the evidence that the defendant railway company knew that the stack of poles was located upon premises over which it had control. * * *" The instruction was proper in view of all the evidence. The railroad yards extended in a general north and south direction between the railroad tracks and a street. Nine or ten months prior to the accident defendant's agent at Mena had assigned to the Supply Company a part of this strip of land about 800 feet in length adjacent to the track for handling its poles. The interest of the defendant "was to secure the movement of freight. * * * revenue." There was no written contract, and no rent or other compensation was paid for the use of the land. The defendant's employees had access to the yards at all times. H. L. Trest, employed to buy poles for the Supply Company, made the arrangement with the defendant for permission to stack the poles on the premises. He testified that the agent of the defendant just designated the spot where the poles should be piled and that he supposed the company continued to maintain control over it; that if the defendant had told him that a stack of poles was dangerous to any one and to remove or restack them he would have done so. There was no conflicting testimony. The defendant owned the yards, and the extent of its control over their use, under the rule that the evidence must be viewed in the light most favorable to the plaintiff, Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Ætna Life Ins. Co. v. Newbern, 8 Cir., 127 F.2d 171, 173, was a question for the jury.

In support of its contention that its motion for satisfaction of the judgment against it should have been sustained, defendant relies upon § 4 of Act 315, Arkansas Session Laws 1941, which reads: "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

There are two reasons why the statute is not controlling. Under Arkansas law a statute will not be given retroactive effect if susceptible of any other construction. Rhodes v. Cannon, 112 Ark. 6, 164 S.W. 752. The act here relied upon became effective March 26, 1941; the injury occurred and the cause of action arose on September 2, 1940; and the covenant not to sue was executed December 20, 1940. Further, the Supreme Court of Arkansas "is committed to the doctrine that a covenant not to sue one of two joint tortfeasors does not operate as a release of the other from liability." Altman-Rodgers Company v. Smith, 185 Ark. 100, 46 S.W.2d 4, 5; Mahaffey v. Glover, 184 Ark. 1159, 45 S.W.2d 521.

In its reply brief defendant concedes that the covenant not to sue does not operate to release a joint tort-feasor from liability; but it contends that a person injured by the concurrent negligence of two joint tort-feasors is entitled to be paid only once for his injury. This point is raised for the first time in the reply brief and no authorities in support of such principle are cited. The rule upon this proposition in jurisdictions other than Arkansas is in conflict (see Annotations, 104 A.L.R. 931), and we have found no Arkansas case in point. We need not speculate, however, as to the rule in Arkansas. Since the defendant did not present the question in the district court, it should not be permitted to raise it for the first time in this court. The covenant not to sue was referred to in the answer only as an alleged bar to plaintiff's cause of action, and the covenant was introduced in evidence on the immaterial theory that defendant is entitled to recover from the Supply Company reimbursement for whatever plaintiff should recover in this case. A similar situation was presented to the Supreme Court of Arkansas in the case of Arkansas Power & Light Company v. Liebe, 201

Ark. 292, 144 S.W.2d 29, and the court held that where in an action for death a defendant does not plead in mitigation of damages that plaintiff received consideration from a joint tort-feasor on a covenant not to sue, he cannot maintain an action for set-off against the judgment for any amount so received by the plaintiff. The court further held that an alleged right to a set-off in mitigation of damages for an amount received by the plaintiff in consideration of a covenant not to sue from a joint tort-feasor is not a "claim" within the meaning of § 1250 of Pope's Digest, providing that a judgment at law does not prevent recovery of any "claim" which might have been used as a defense by way of set-off.

The court did not err in overruling defendant's motion for satisfaction of the judgment.

The judgment appealed from is affirmed.