GARRETT *v.* ARKANSAS POWER & LIGHT COMPANY.

4-9424                                    237 S. W. 2d 895

Opinion delivered March 26, 1951.

576

*Kenneth C. Coffelt,* for appellant.

*House, Moses & Holmes, Thomas C. Trimble, Jr.,* and *Edward B. Dillon, Jr.,* for appellee.

Paul Ward, J. On December 16, 1944, Tommy Garrett, then 17 years old, was injured by coming in contact with a "live" electric wire when he climbed a light pole belonging to the defendant, Arkansas Power & Light Company. The extent of injury is not an issue here, because the lower court directed a verdict in favor of the defendants.

The scene of the accident is an old rock crusher located near the Little Rock Country Club, to the northwest, and also south of the Arkansas River. The land belonged to appellee, V. C. Johnson, and the pole and other electrical equipment were placed there some years ago by the Arkansas Power & Light Company to furnish power for the rock crusher, which has not been in operation for some time. There was another pole a few feet from the one mentioned and there was a platform built between on which rested the transformers. The platform was about ten feet from the ground; the poles were about twenty-nine feet tall; and three large insulated wires ran from the top of the transformers to the said building, but were not "live" wires when the accident happened.

Appellant's testimony is to the effect that the entire locale looked dilapidated and that young people had been

using it as a playground and picnic-ground for several years, at which time they would climb the poles and slide down the three long wires to the old building and would play around the building and the grounds; and that it was on such an occasion when Tommy climbed up one of the poles and contacted a "live" wire, evidently at the top of the transformer and was injured.

Since the question before us is whether there was sufficient evidence to make a jury question it seems proper to. set out portions of appellants' complaint and to fully abstract the pertinent testimony.

The original complaint was filed by Charles D. Garrett, father and next of friend of Tommy Garrett, a minor, in his own behalf and on behalf of Tommy Garrett, and Tommy Garrett, a minor, in his own behalf, against Arkansas Power & Light Company, and V. C. Johnson, d/b/a Johnson Team and Dray Company, defendants, and states that the ground or location of the poles and high power lines was owned by the defendant, Johnson. Certain allegations of negligence were made in the complaint, but an amendment to the complaint was later filed which contained substantially the same allegations from which we quote: ". . . said negligence being that high voltage lines not in use were abandoned and left by the defendants in the area of the tower and old rock crusher grounds where children and young people had access to said grounds and place and were in the habit of frequenting said place for recreational purposes, such conditions at the time and place being known to defendants or with the exercise of ordinary care could and should have been known to them; that no warning signs were posted and no information given to the public that said power lines or transmission lines were charged with heavy voltage; the said line was abandoned and left in such condition as to cause reasonable minds to believe the line was dead. and unattended. The line, in fact, and the premises in connection therewith were unattended; that the grounds were not enclosed and were left free and open to the public, thereby extending invitation to the public to enter thereon; and the defendants

had knowledge that said dangerous condition existed which the public did not have and that said wires were left exposed and accessible to this minor plaintiff, . . ."

Appellees filed separate but similar answers in which they denied all material allegations and further stated that the accident occurred on December 16, 1944, and that the amended and substituted complaints should have been filed within three years after the accident occurred, and further stated that any injuries sustained by Tommy Garrett were due to his own negligence, carelessness and malicious acts; and that this private property was under fence with locked gate, and that the plaintiff as a trespasser willfully, maliciously and carelessly subjected himself to come in contact with the electric wire.

Appellees pleaded the three-year statute of limitations, but have not stressed the point in their briefs. It appears that no new issue was raised in the amendment to the complaint, and so we hold this statute is not available to appellees as a defense.

Charles D. Garrett, Sr., states: he has lived in Little Rock for the past twenty years, and brings this suit for himself and son. At the time of the accident his son was seventeen years of age. Until the accident occurred witness knew nothing of the premises. Three days later he went to the scene where he saw the old rock crusher, which was about three stories high; it has stair steps and here set two poles right in the open place just before it goes over into the valley. It was just a short distance from the rock crusher to the poles. He went back later and the gate had been nailed up and signs posted. Then he went back again and everything had been torn down and he took some pictures of the surroundings. There was no gate when he first went there and there was no fence around the property. The property looked dilapidated, and there were a lot of gun shells around, and plenty of people had been down there. There were wires hanging down, and he couldn't imagine the place being left open. When he went back the second time a gate had been put up and posted "Keep Out Danger". The dynamos in the rock crusher were corroded and rusted.

The transformers on the electric wire poles were eight and one half or nine feet from the ground. There were a good many loose wires hanging around the poles, and the property showed no appearance of having been used recently. It looked like they were trying to move it away instead of building it. The meter box on the pole is about half way from the ground to the transformers. It is a good step from the ground to the meter box, and from the meter box on to the platform where the transformers are on the wire pole. Long cables ran from the landing on the pole where the transformers were situated on down into the valley where the children could slide down on the wires and could easily be reached from the ground. The rock crusher was a half a mile from the street that runs north and south just west of St. John's down where the rock crusher was.

Thomas Garrett states: he has been going down to the grounds where the rock crusher was and electric poles were ever since "he was able to get away from home." Very seldom went by himself, usually with a group, all ages. While there they would climb through the old building, climb over everything. Sometimes they would have picnics. There were three wires there and it was great sport to get on those wires and slide down them to the valley. You could reach up and get hold of those wires and put your foot on the bottom one and slide down to the building. This has been going on as long as he can remember. He had climbed up the poles many times, and has seen others do the same. The rock crusher has not been in operation since he can remember, and he started going there when he was eleven or twelve years old, and was seventeen when hurt.

"Q. Tell the jury what occurred down there, what happened. A. I had been playing around on the three big cables and climbing up on the top of the platform. The last time I hit it I don't remember. It was just that quick. Q. How did you get up there on that platform? A. At that particular time, hand over hand up the three cables. I stepped on this box then you take another step and you go up on the platform. It is three or four feet

from the top of the box to the platform. I'd say it was about one hundred fifty feet from where these cables were tied into the top of the pole to where they run down to the buildings. Q. Was there many activities out there at all that came to your attention that would show anybody had charge of that property? A. None, and there never had been that I know about. Q. Do you think anybody thought there was electricity up there? A. No sir. Q. Is there any fence about that property out there, Tommy? A. No, other than what my dad said. Q. You realized, of course, Mr. Garrett, those were electric wires for the purpose of serving electricity, did you not? A. I thought— Q. You knew, however, it had been and was put there for the purpose of conveying electricity? A. I didn't think about it. Q. Well, for what purpose did you think the line was put there, Mr. Garrett? A. At the time to tell you the honest truth, I thought it was for me to play on. Q. You knew, Mr. Garrett, that those were electric wires, did you not? A. I didn't know they had electricity in them. Q. You knew that electricity and electric wires as such might be dangerous, did you not? A. Well, if they had electricity in them, yes.''

He remembers climbing up to the platform, but does not remember anything for quite some time. It was a damp drizzly day and some of them had been down there gathering mistletoe for Christmas. The transformers had big gaping holes in the side of them and he did not think about them. There was water or acid that day coming out of them.

''Q. You knew that was some kind of electrical equipment, did you not? A. Well, I know it now. I knew it then, but somehow as many times as I have been over there, I didn't think about it.''

Yes, he guessed he knew that those transformers were some kind of electrical equipment and knew that the wires running down something like one hundred fifty feet were electrical wires, and estimated the distance from the ground to the transformers to be eight or nine feet. Discovered the holes in the transformers the day

of the accident because he thought there might be acid and that it might be dangerous if he contacted it. When he got up on the platform it was his intention to slide down the three wires. He was right there at the transformers.

Sherman Henry states: he was twenty-one years of age and was with Garrett when he was injured. He has been there many times when there were fifteen or twenty young folks having picnics and playing around on the various objects. The ground was used generally for recreational purposes, and the young people would play around on the old structures and wires and poles; would slide down and climb down the side of the mountain up to the old rock quarry. ''When Tommy was injured to the best of my knowledge he went up the guy wire.''

''Q. What would you climb those wires for? A. A lot of times we would see who could climb it the most times—more or less a strength test. Q. Would you climb up to where the transformers were on the platform? A. Yes, sir.''

The wires and the poles didn't look like they were being used and looked as though they were all falling down and there was no fence around the property. The boys and girls who played around there came from all over town and were usually fifteen to seventeen years old.

He was not looking at Garrett when he was hurt. The last he saw he was going up the wire hand over hand and to the best of his knowledge he fell from the platform as he stepped on it.

Mrs. Thomas Garrett is the wife of Thomas Garrett and was with him when he was injured. Thomas climbed up to the platform and everything started buzzing. The telephone poles were in a dilapidated condition. Some of the cans had holes in them and looked like they hadn't been used in years. At the time she was sixteen years old and had been going down there practically all of her life with other young people on picnics. They would climb up on the platform and slide down wires. She has

seen them do it many times, and has seen them climb the poles some times.

Leland Gunn is twenty years of age, lives in Little Rock, knows Tommy Garrett, is familiar with the premises. Knows that the young people frequently go down to this place, and knows that sometimes ten or twelve people would congregate on the premises. The premises have the appearance of having been abandoned, and have looked that way since 1940. He saw the young people climbing the poles and going down the wires hand over hand and knows the property was not under fence.

Conrad Courtney is twenty-two years of age and knows Tommy Garrett and is familiar with the property around the rock crusher; has been down there on a picnic with his Sunday School Class and on several occasions members of the Boy Scout Troop went out there; there were no signs there which said "Keep Out" and no signs which said "High Voltage".

Hubert Knight has been going out there five or six years and still goes down there occasionally to shoot a rifle, and seldom missed a week end. The young people climb up the poles and go down the wires hand over hand.

Testimony on the part of the defendant, Arkansas Power & Light Company, was to the effect that their line which ran to the rock crusher and to the pole in question comes from a sub station and carries 3,000 volts on poles approximately thirty feet high and there is a transformer station which cuts the voltage down to 2,300 volts; that the platform on which the transformers rested was ten feet and ten inches from the ground, and the cross arms at the top of the poles were twenty-nine feet and three inches from the ground; and "dead end" on the insulators when the current is disconnected. The three wires which ran from the poles or transformers were service wires connecting with the rock crusher building but had been disconnected and were not "live" wires at the time of the accident. Examination after the accident showed that two holes had been knocked in the transformer and it looked like it had been done with an ax.

A disconnection had been previously made at the plant and this was made at a distance of seventeen feet and three inches from the ground; that before anyone standing on the platform on which the transformers rested could reach a "live" wire it would be necessary to climb or reach up six feet and five inches from the platform; that it followed standard procedure when they made the disconnection. It had never been requested to discontinue service there on a permanent basis, but had several times been requested to discontinue service for short periods since about 1930, and at the time of the accident it had not been informed there would be no further need for electric service.

Appellee, Johnson, is seventy-one years old and lives in Little Rock and acquired this property about the year 1906 and operated the same for about eighteen years, a part of the time it had been leased to others; he wanted the transformers to stand until he disposed of the property; and it was in January, 1945, about thirty days after the accident, when he first notified the Arkansas Power & Light Company he would not want electric power any longer. He stated a fence had been around the property ever since he owned it, but that the Boy Scouts and other young people would tear it down every Saturday and Sunday and that he had an "awful" job keeping them off the property, and that at times he maintained a watchman; that the young people had been going on the premises from time to time over a period of years, but he would tell them to stay away.

As stated before, the lower court instructed a verdict for appellees and thereby refused to allow the testimony to be considered by the jury. The well established rule of this court is that a directed verdict for the defendant is proper only when there is no substantial evidence upon which the jurors, as reasonable men, could find for the plaintiff, and the trial judge must give the plaintiff's evidence its highest probate value. It is in accordance with this rule that we view the pleadings and the testimony in this case. Apparently appellants rely on two main propositions to sustain their contentions. The first

is that Tommy Garrett was an invitee or permittee upon the premises, and the second is that the attractive nuisance doctrine applies. We will discuss them in the order mentioned.

To sustain their contention that Tommy Garrett was an invitee appellants cite the following cases: *Skerl* v. *Willow Creek Coal Co.*, 69 Pac. 2d 502, 92 Utah 474; *Searles* v. *Ross et al.*, 134 Me. 77, 181 Atl. 820, and *Roux* v. *Lawand*, 131 Me. 215, 160 Atl. 756. The *Skerl* case cannot be cited as controlling in this instance because there the plaintiff with four other boys and girls were invited by the defendant company to visit its mine. The *Searles* case throws no light on the question whether Tommy Garrett was an invitee for the reason that the plaintiff, a child nine years old, was living with his family on a farm belonging to the defendant under an arrangement with some charitable organization. They were permitted to live on the farm and to pick berries, plant a garden, etc. On the occasion of the injury the defendant, who was running a mowing machine called to the plaintiff and asked him to come over and "touch up" the horses which defendant was driving, and while doing so the plaintiff was injured. In the *Roux* case the plaintiff was an employee of the defendant firm and was injured when he struck a match to light a cigarette in the back part of the hat cleaning and shoe shining shop. The lighted match came in contact with a pail of inflammable fluid which burst into flames and injured the plaintiff. We can find nothing in this case to support appellants' contention that Tommy Garrett was an invitee of the defendants herein. We are unable to find anything in the record in this case upon which a jury could have based a finding that appellant, Tommy Garrett, was an invitee when he entered on the premises of appellee Johnson, or upon the poles or equipment belonging to appellee, Arkansas Power & Light Company.

In the case of *Armour & Co.* v. *Rose*, 183 Ark. 413, 36 S. W. 2d 70, the plaintiff, Rose, was held to be an invitee and not a licensee where he had gone to the defendant's place of business to purchase meat, a thing

which he had been doing for seven or eight years. However, Judge MEHAFFY, speaking for the court, laid down what seems to be the general rule in this state, and we quote: "The general rule is that the owner or occupier of premises is under no duty to protect those from injury who go upon the premises as volunteers or merely with his express tacit permission from motives of curiosity or private convenience in no way connected with business or other relations with the owner or occupier. A person going on one's premises under such circumstances would be a bare licensee, . . ."

In the case of *St. Louis I. M. & S. Ry. Co.* v. *Dooley*, 77 Ark. 561, 92 S. W. 789, the plaintiff Dooley sued the Railway Company to recover damages suffered by her from a fall through steps erected by the defendant over and across a fence, constructed by it along its right of way. It was alleged that the injury occurred because of the negligent failure of the defendant to keep the steps in repair. Judge BATTLE, speaking for the court, p. 566, used this language: "The bare permission of the owner of private grounds to persons to enter upon his premises does not render him liable for injuries received by them on account of the condition of the premises. But if he expressly or impliedly invites, induces or leads them to come upon his premises, he is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the premises, . . ." Even though we were of the opinion that the evidence in this case poses a question for the jury to say whether the defendants had expressly or impliedly invited Tommy Garrett upon its premises, it would still be of no avail to appellants because it could not be inferred from this that the appellees had impliedly invited the plaintiff to climb up the electric light pole to a place where he could come in contact with a "live" wire. In the case last cited there was clearly an implied invitation to cross over the steps which the railroad company had built.

It is sometimes difficult to distinguish between an invitee and a licensee, especially where each is implied, but a rule to do so was quoted with approval in the case

of *Knight* v. *Farmers' & Merchants' Gin Co.*, 159 Ark. 423, 252 S. W. 30, as follows: "It is not always clear under a given state of facts as to what inference may be drawn as to a person being a licensee or an invitee but one of the sure tests is whether or not the owner of the premises is interested in the presence of the visitor." Obviously it cannot be seriously contended here that either of the appellees was interested in Tommy Garrett's presence on the premises.

Having arrived at the conclusion that Tommy Garrett was not an invitee but was a licensee it remains to consider what duty the law imposes on appellees in regard to him as such licensee. Our law seems to be well settled in this regard. In the case of *Knight* v. *Farmers' & Merchants' Gin Co.*, *supra*, the court said:

"In all our decisions on the subject—and there are many—we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser so far as concerns the duty which the owner owes him for his protection; that he takes his license with its concomitant perils, and that the owner owes him no duty of protection except to do no act to cause his injury after his presence there is discovered."

And in the case of *St. Louis I. M. & S. Ry. Co.* v. *Pyles*, 114 Ark. 218, 169 S. W. 799, the Court said:

"It is well settled, however, that a bare licensee under circumstances of this kind is not entitled to any affirmative act of protection on the part of the owner who grants the license. In this respect the case stands the same as if someone else owned the premises instead of the railway company.

"'The bare permission of the owner of private grounds to persons to enter upon his premises does not,' said this court in the case of *St. Louis I. M. & S. Ry. Co.* v. *Dooley*, 77 Ark. 561, 92 S. W. 789, 'render him liable for injuries received by them on account of the condition of the premises.' "

Other cases could be cited to the same effect but we think the law in this connection is so well settled that it is not necessary. Under the facts in this case as set out above we are driven to the conclusion that the lower court committed no error in refusing to submit to the jury the question of appellees' negligence. Conceding that the premises had been used as a playground on numerous occasions and over a number of years and that the buildings and surroundings gave the appearance of having been abandoned there is no allegation or proof that the Arkansas Power & Light Company's electrical installation was not in accordance with usual procedure and regulations or that it was inherently dangerous. The two poles in question were about twenty-nine feet tall and the insulators were on a platform built between at a height of ten feet from the ground. The only "live" or dangerous wire was located on or near a cross beam which was itself about six and one-half feet above the platform on which the insulators rested. It is not contended that anyone could come in contact with a dangerous wire without first climbing up on the platform and then climbing or reaching up to the cross beam. It is not entirely clear from the testimony just how Tommy Garrett reached the platform, but it does appear that he reached it either by stepping on the meter box which was attached to one of the poles below the platform or he climbed hand over hand up the three heavy wires which ran from the poles to the rock crusher plant. However it makes no difference since in either event he did so upon his own initiative and not because of any expressed or implied invitation. Likewise it is not clear just how he came in contact with the wire that injured him but again that is not material because in all events it happened in pursuit of a venture of his own choosing and because there is no contention there was a "live" wire anywhere closer to the ground than approximately seventeen feet.

Appellants' next contention is that the attractive nuisance doctrine applies. After careful consideration we have reached the conclusion that such doctrine cannot

be invoked in this case. It must be remembered that Tommy Garrett, at the time of the accident, was seventeen years old and a junior in high school where he received some rudimentary training in electricity, and it is our opinion that this doctrine can be applied only for the protection and benefit of children of tender years. This position is fully supported by the great weight of, if not all the authorities on the subject. In the case of the *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A., N. S. 1020, we find this language:

"The leaving upon the premises of a dangerous object attractive to children does not alone constitute negligence; the act of negligence consists in leaving such object under such circumstances that one of ordinary prudence might reasonably expect that a child too young to appreciate the danger would be allured to and attracted thereby."

In no instance have we found the doctrine to be extended to apply to a person seventeen years of age. In *Barnhill's Adm'r.* v. *Morgan Coal Co.,* 215 Fed. 608, the court indicated it would be limited to persons fourteen years old. In the case of *Pollard* v. *Oklahoma City Ry. Co.,* 36 Okla. 96, 128 Pac. 300, the decision did not directly involve this question but the court used language which is significant:

"The Justes boy, being past fourteen years of age, and a trespasser on the company's premises, was, judging solely from his testimony as shown by the record, not entitled to the protection of that law which requires owners of premises to use care in keeping the same in safe condition on account of the unreasoning and natural impulses of children of immature years, who happen to enter thereon either as trespassers or invitees."

The Supreme Court of Missouri in *State ex rel. Kansas City Light & Power Company* v. *Trimble,* 315 Mo. 32, 285 S. W. 455, reversed the Court of Appeals in a well considered case wherein the company was alleged to have negligently caused injury to Marvin Miller, a minor past fourteen years of age, in that it negligently erected and

maintained a pole with metal steps beginning two feet from the ground and leading to the wire at the top (in violation of a city ordinance) and to have known, or by the exercise of ordinary care could have known, the same to be "attractive to deceased and boys of his age, experience, and capacity, and constituted an invitation and lure to deceased and such boys to climb upon such pole and come in contact with said wires, and thereby to occasion his death or injury." The Court, in refusing to extend the attractive nuisance doctrine, used these words:

". . . it is inconceivable that a bright, intelligent boy, doing well in school, past fourteen years of age and living in the city, would not understand and appreciate the fact that it would be dangerous to come in contact with an electric wire, and that he was undertaking a dangerous feat in climbing up the pole. . ."

In the light of the well established rule applicable to the attractive nuisance doctrine, considering the undisputed evidence in this case, we hold that it cannot be invoked by appellant Tommy Garrett.

Since we find the trial court committed no error the case is affirmed.