WILLIE COOPER, SPECIAL ADMINISTRATOR OF THE
ESTATE OF EDDIE JAMES COOPER, DECEASED *v.*
DIESEL SERVICE, INC. AND CHESS WILLIAMS

73-61                                    496 S.W. 2d 383

Opinion delivered July 2, 1973

*Ben McCourtney & Associates,* by: *Troy L. Henry,* for appellant.

*Rieves & Rieves,* by: *Donald A. Forrest,* for appellee.

CARLETON HARRIS, Chief Justice. Eddie James Cooper, age six, drowned on May 13, 1972, in an artificially constructed pond located on property owned by appellees in Crittenden County, Arkansas. Appellant, Willie Cooper, as Special Administrator for the Estate of Eddie James, instituted suit against appellees alleging first that appellees were liable under the attractive nuisance doctrine, and second that the little boy's death was due to negligence of appellees, i.e., the failure to exercise ordinary care. A demurrer was filed to the complaint asserting that the allegations were insufficient to constitute a cause of action, and this demurrer was sustained by the court. After the complaint was amended, another demurrer was filed which was also sustained, and the complaint dismissed. From the order of dismissal, appellant brings this appeal.

For reversal, it is first urged that it was error to dismiss appellant's complaint on the basis that the attractive

nuisance doctrine is not applicable to the facts as alleged by appellant. It is then asserted that it was error to dismiss the complaint for the reason that the alleged facts stated a cause of action of negligence against appellees. We proceed to discuss these points in the order listed.

The complaint alleged that for many years following construction of the pond, which covered approximately three or four acres, the appellees had allowed it to remain full of water and at the time of the drowning, appellees had negligently permitted the "pond to remain open, unfenced, unguarded and unprotected, without signs or warnings of any character." It was further asserted that the decedent was allured and attracted onto the premises, his childish curiosity aroused, as other children of tender years had been previously allured and attracted, and that, being unaware of the hazards of going near said pond, stepped or fell into the water, and being unable to swim, drowned. The amended complaint further sets out specifically the allegations relied upon, and reads as follows:

> "The pond dug out and constructed by said defendants was constructed in such a manner that on three sides, at the water's edge, the bank and bottom of the pond sloped in a slight manner toward the center of the pond. Unknown to the deceased, the bank of the pond was formed on one side so that it extended downward at a very sharp angle so that only a few inches from the water's edge the bank dropped downward sharply to the bottom of said pond, to a distance of approximately 12 feet. This deep drop-off, within a few inches of the water's edge, was covered by the surface of the water alongisde the bank and was not ascertainable by the deceased or any child of such tender years. That the suddenness and sharpness that the bank dropped off at the particular point alongside the pond in which the deceased slipped or fell, constituted a hidden, unusual danger and hazard existing on said premises. That the general slope of the bank and bottom along the other areas of the pond where numerous children in the neighborhood, had, from time to time, swam, fished, and played in said pond would lead a child of the deceased's age to be unaware of this sudden deep drop-off that existed only a few inches from the water's edge and underneath the surface of the water."

While this state recognizes the attractive nuisance doctrine, we unhesitatingly hold that this case does not fall within that doctrine. We have three cases in which the subject is rather thoroughly discussed. In *Carmichael* v. *Little Rock Housing Authority*, 227 Ark. 470, 299 S.W. 2d 198, we said:

"Although it is rejected by some courts, we adhere to the attractive nuisance doctrine or, as it is sometimes called, the 'turntable doctrine' in this state. Broadly stated, the doctrine embraces the proposition that one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonable be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. 38 Am. Jur., Negligence, Sec. 142.

"We have frequently approved the following statement by Judge Hughes, speaking for the court, in *Brinkley Car Co.* v. *Cooper*, 60 Ark. 545, 31 S.W. 154, 46 Am. St. Rep. 216: 'The owner of land is not required to provide against remote and improbable injuries to children trespassing thereon. But he is liable for injuries to children trespassing upon his private grounds, when it is known to him that they are accustomed to go upon it, and that, from the peculiar nature, and exposed and open condition, of something thereon, which is attractive to children, he ought reasonably to anticipate such an injury to a child as that which actually occurs.' See also, *Foster* v. *Lusk*, 129 Ark. 1, 194 S.W. 855, and cases there cited. The mere fact that a thing is attractive to children is not of itself a ground for invoking the attractive nuisance doctrine. *Arkansas Valley Trust Co.* v. *McIlroy*, 97 Ark. 160, 133 S.W. 816, 31 L.R.A. (N.S.) 1020.

"Although similar cases have frequently engaged the attention of other courts, we have never determined whether the attractive nuisance doctrine is applicable to a pond under a situation similar to that presented

here. 'The attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in the absence of some unusual condition or artificial feature other than the mere water and its location.' 65 C.J.S., Negligence, Sec. 29 (12) j. The weight of authority in this country is to the effect that ponds, lakes, streams, reservoirs, and other bodies of water do not constitute an attractive nuisance in the absence of any unusual element of danger. See 56 Am. Jur., Waters, Sec. 436, where the text-writer further says: 'In some cases, the view has been taken that the proprietor may be held liable where some additional or unusual element of danger is involved in the situation as where the pond or pool is in close proximity to a highway or a playground, or where it is located in an urban or densely populated community, but the weight of authority appears to hold to the contrary, except where the facts bring the case within the rule respecting pitfalls or hazards adjacent to highways. * * *

"Since water hazards exist everywhere, the tendency of a majority of the courts which recognize the attractive nuisance doctrine under other circumstances, is to refuse to apply it to permit recovery for the drowning of a child in a pond or other body of water unless it constitutes a trap or there is some other hidden inherent danger. Many cases to that effect are collected in an exhaustive annotation on the subject in 8 A.L.R. 2d 1259. (Citing numerous cases from nine different states).

"A variety of reasons have been assigned for the majority rule. First is the difficulty of placing any practical limitation upon such liability, which is also denied for the reason that the danger inherent in water in a pond is or should be obvious to a child. There is also a disinclination on the part of courts to shift the duty of caring for their children from the parents to the owners of such hazards. There is also the impracticability of guarding or fencing against a hazard of this kind. As the court said in *Emond* v. *Kimberly-Clark Co.,* 159 Wis. 83, 149 N.W. 760: 'The world cannot be made danger proof—especially to children. To require all natural or artifi-

cial streams or ponds so located as to endanger the safety of children to be fenced or guarded would in the ordinary settled community practically include all streams and ponds—be they in private parks or upon private soil,—for children are self-constituted licensees if not trespassers everywhere. And to construct a boy-proof fence at a reasonable cost would tax the inventive genius of an Edison.' "

In *Jones* v. *Comer,* 237 Ark. 500, 374 S.W. 2d 465, much of the language in *Carmichael* was repeated, and it was pointed out that if a pond constituted "a trap" or other "hidden inherent danger", the attractive nuisance doctrine would apply. In the case before us, appellant argues that the fact that one side contained a drop downward to approximately twelve feet, instead of a gradual slope as was true on three sides, constituted a trap. We cannot agree for all bodies of water are deeper in some parts than in others. What is meant by a trap is pointed out in *Brinkley Car Co.* v. *Cooper, supra,* where a six-year-old child was scalded by walking into a pit containing hot water, the water being so completely covered, however, with pieces of bark, that the water could not even be seen.

Appellant also argues that the fact that the pond was artificially created distinguishes it from *Jones* v. *Comer, supra,* and *Carmichael* v. *Little Rock Housing Authority, supra,* but we do not attach any weight to this distinction.[1] All of these ponds were still nothing but bodies of water containing no special enticements to children such as a raft, a slide, swings over the water, etc.

Actually, in our view, appellant comes somewhat nearer stating a case under his second point than under the first. The allegations are that children constantly played in the area, a fact known, or one that should have been known, to appellees; the fact that the one side where the child was drowned contained a precipitous drop rather than a slope as on the other three sides was also

---

[1] It will be recalled that in the latter citation, it was mentioned that the attractive nuisance doctrine generally is not applicable to any body of water, artificial as well as natural, and it is inferred that that would be the view of this court; however, the body of water there involved was natural, and accordingly the point was not specifically passed upon.

known, and no warnings or protection of any nature had been placed at the alleged dangerous location. Again, however, we cannot agree that the complaint states a cause of action. Shall this court say that an individual does not have a right to dig a pond on his property that will comply with his use requirements when that act is entirely legal? There may be a good reason for the pond being deeper on one bank than on the others. If such an act constitutes negligence, then how can a property owner, who desires and needs that particular kind of a pond, protect himself against potential lawsuits? Certainly, we would all agree that if the landowner is liable for injury to, or the death of, a six-year-old child, he would face the same liability for a three or four-year-old child. At that age, signs could not be read, and, for that matter, even with children some older, it is doubtful that the information on a sign would be sufficiently evaluated; as for fencing, as pointed out in *Carmichael,* "to construct a boy-proof fence at a reasonable cost would tax the inventive genius of an Edison."

While this court said in *Arkansas Power & Light Co. v. Kilpatrick,* 185 Ark. 678, 49 S.W. 2d 353, that children of seven years of age, going onto other's property, are not trespassers, our finding that this case does not come within the attractive nuisance doctrine, precludes any holding that Eddie James Cooper was an invitee.[2] Under the allegations of the complaint, since he cannot be a trespasser, he was a licensee. In *Garrett* v. *Arkansas Power & Light Co.,* 218 Ark. 575, 237 S.W. 2d 895, this court, quoting an earlier case,[3] said:

" 'It is not always clear under a given state of facts as to what inference may be drawn as to a person being a licensee or an invitee but one of the sure tests is whether or not the owner of the premises is interested in the presence of the visitor.' * * *

"Having arrived at the conclusion that Tommy Garrett was not an invitee but was a licensee it remains to consider what duty the law imposes on appellees in regard to him as such licensee. Our law seems to be well settled in this regard. * * *

[2]See the discussion in the cited case as to what constitutes an invitation on page 683.

[3]*Knight* v. *Farmers' & Merchants' Gin Co.,* 159 Ark. 423, 252 S.W. 30.

" 'In all our decisions. on the subject—and there are many—we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser so far as concerns the duty which the owner owes him for his protection; that he takes his license with its concomitant perils, and that the owner owes him no duty of protection except to do no act to cause his injury after his presence there is discovered.' "

Of course, there is no allegation that appellees were interested in Eddie James' presence on the premises, and there is no allegation that his presence on the premises was known to either appellee. See also AMI 1106, Paragraph A, which points out that an owner of property has no duty to maintain the premises in a reasonably safe condition for a licensee.

Summarizing, we hold that a pond, natural or artificial, which, outside of being a body of water, possesses no features which would allure a child of tender years, is not an attractive nuisance. We too find that the fact that the bank dropped off suddenly on one side does not constitute a trap. Likewise, we hold that appellees owed the little boy no duty of protection except to do no act to cause his injury after his presence there was discovered.

Affirmed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting in part. I fully agree with that part of the majority opinion treating the attractive nuisance theory; I respectfully dissent from that part upholding the circuit court's sustaining of the demurrer to allegations of negligence which are not dependent upon the attractive nuisance doctrine. It is my opinion that the complaint, given the broad, liberal treatment accorded on demurrer, states a cause of action. I can and do accept the premise of the majority that the child in this case was a licensee. I think that the complaint can properly be said to have alleged: the condition on the land was an artificial one; the owner knew that numerous children frequently swam, fished and played in the pond; he knew or should have known that the precipitous

drop-off on one side of the pond was an unusually dangerous one for children, who, because of their youth could not be expected to discover the dangerous condition or realize the danger involved; he did nothing to make the condition safe, to warn appellant's decedent, or any child, or to protect the children from harm.

Appellant asks us to adopt Restatement, Torts, Second, § 339. This section would treat the child as a trespasser. If he were a licensee, as he is taken by the majority to be, the landowner certainly owed him no less duty than it would owe a trespasser. See 62 Am. Jur. 2d 416, Premises Liability, § 145. I consider the following Restatement sections particularly pertinent:

§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reasons to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

## § 342. Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the conditions safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

## § 343B. Child Licensees and Invitees

In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee.

Appellees, and apparently the trial court, relied only upon AMI Civil 1102, 1103 and 1106. I do not think that these instructions are intended to encompass the whole field of an owner's liability to the exclusion of a case such as this where a child of tender years is involved, nor do I think that this court has ever given consideration to the theory advanced by appellant. Consequently, I do not think that the instructions relied upon are conclusive of the question here presented on demurrer.[1]

---

[1]Instruction 1103 is not necessarily in conflict with the Restatement principles. It was not necessary that the pleader use the words "wanton conduct" in the complaint, if the facts alleged tended to state an utter indifference to or conscious disregard for the safety of others. See AMI Civil 1101; *Harkrider* v. *Cox*, 230 Ark. 155, 321 S.W. 2d 226. Acts which would not be considered a breach of duty toward an adult licensee may be considered wilful or wanton where a child is involved. 62 Am. Jur. 2d 401, Premises Liability § 133. Furthermore, if the owner had reason to believe that the licensee was in a position of danger, the owner had the duty to use ordinary care to avoid injury to the licensee.

Our cases furnish little in the way of precedent where the licensee is a child of tender years. It seems to me that when an owner has knowledge that children of tender years are frequenting his premises, at least under circumstances from which permission or acquiescence may be inferred, he is under some duty to give a warning of dangerous conditions created by him which he might reasonably expect would be discovered and appreciated by an adult, or to take steps to minimize the danger or protect children from it. That which is not a "trap" to an adult may be one to a child of tender years. Extensive discussion of the theory I would follow in reversing the judgment overruling the demurrer is to be found at 62 Am. Jur. 2d 400, et seq., §§ 133, 134; Annot. 26 A.L.R. 3d 317, Duty of Possessor of Land to Warn Child Licensees of Danger.

I am authorized to state that Mr. Justice Jones joins in this dissent.