St. Louis-San Francisco Railway Company et al. *v.* Sheppard.

4-4737

Opinion delivered October 11, 1937.

*J. W. Jamison* and *Warner & Warner,* for appellant.
*Partain & Agee,* for appellee.

HUMPHREYS, J. This suit was brought by appellee, as administratrix of the estate of George Sheppard, deceased, in the circuit court of Crawford county against appellant, to recover damages resulting from the death of George Sheppard, her husband, while crawling under a refrigerator car which had been stored or parked by appellant on appellant's switch or service track in its switch yard adjacent to an oil mill located on the west side of the switch track, in Fort Smith, Arkansas.

The allegation of negligence was that appellant had kicked three of its freight cars out of its train on the main line onto said switch track for the purpose of connecting them with the two refrigerator cars without maintaining any lookout or any means of stopping or controlling the movement of the freight cars or for giving any signal or warning to anyone who might be upon or near the switch track. In other words, the suit and right to recover for the death of George Sheppard was predicated upon appellant's failure to comply with the lookout statute in the movement of these freight cars, which statute is as follows:

"It shall be the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed." Crawford & Moses' Digest, § 8568.

Under this statute, in order for appellee to have recovered, she must have proved facts and circumstances from which the jury might have inferred that her husband had been killed on account of the movement of the freight cars and that the danger might have been discovered and the injury and death avoided if a lookout had been kept. The burden was upon her to make such proof in order to recover.

The cause was submitted to a jury upon the sole question of whether appellant or its employees failed to comply with the lookout statute set out above, resulting in a verdict and judgment in favor of appellee for $3,000, from which is this appeal.

The question for determination here is whether there is any substantial evidence to sustain the verdict.

The evidence shows that appellant had placed two refrigerator cars several days before the death of George Sheppard on the switch track located on the east side of and near the oil mill opposite a basement window in the wall of the building in which George Sheppard worked and had worked for a number of years. On the morning of June 1, 1934, about ten o'clock, appellant cut three freight cars out of its train on the main line about six hundred feet north of where the refrigerator cars were stored, and a little later kicked them back south on the west switch track and allowed them to move toward the refrigerator cars without anyone on top of them to keep a lookout for persons who might be on the switch track and to warn them of the danger or to use the brakes and stop them if need be to prevent damage to persons or property on or near the track. The freight cars were moving at the rate of about two and one-half miles an hour. The switch track was straight from the main line from where the refrigerator cars were standing, the curve therein being so slight that it was not appreciable. There was a space of about three feet between the refrigerator cars and the wall of the oil building. The freight cars struck the refrigerator cars with considerable force and moved them some distance in doing so. It was discovered in movement of the re-

frigerator cars that one of them and part of the other ran over and decapitated and cut off George Sheppard's arm, killing him immediately. At the time, he was under the refrigerator car where he had crawled to pass over to the east side of the switch track. He was a trespasser and guilty of negligence in attempting to crawl under the car to the opposite side of the track, but neither his negligence nor the fact that he was a trespasser would prevent a recovery by appellee under the lookout statute. George Sheppard had gone to the basement of the building in which he was working and stepped out through an open window into the narrow space between the refrigerator cars and the wall of the building. He was seen in this narrow space by Frank Carter who had heard the freight cars coming and had gone to a door in the north end of the building to observe it. He was 210 feet north of the refrigerator cars and, looking toward the south, observed George Sheppard in the passage and saw him crawl under the refrigerator car about the time the freight cars passed him and saw them strike the refrigerator cars and move them southward. His evidence, in part, stated in the most favorable light to appellee, is, in substance, as follows:

Witness was standing in a service door at the north end of the oil building looking at switching operations going on in the private switch yard of appellant. The engine backed up after pushing some cars out of the yard onto the main line and kicked some cars toward witness on the west switch track known as the old mill track. As they got even with him, he looked south where the refrigerator cars were standing and saw and recognized George Sheppard standing in the space between the building and cars and then saw the freight cars passing him. He then looked back and saw George Sheppard crawling under one of the refrigerator cars. Sheppard was 210 feet from witness. Witness realized Sheppard was in great danger as the moving cars were 40 to 50 feet distant from Sheppard. There was no one on the moving cars and no locomotive was attached to them. Witness did not know how far the refrigerator

cars moved after they were bumped into, but about one car and one-half ran over Sheppard. Witness said that from where he was standing he could see up or down the track two hundred or three hundred yards in either direction there being no intervening obstructions.

In an analysis of this testimony, the court is unable to find any substantial evidence, either positive or reasonably inferable, that the dangerous position occupied by George Sheppard might have been discovered and his injury and death avoided if an efficient lookout had been kept by appellant or its employees. Under the evidence, it is a matter of conjecture only whether if an employee had been standing on top of the approaching car and keeping a lookout he could have seen George Sheppard in the narrow space between the wall of the building and the refrigerator car. It cannot be reasonably inferred that because Frank Carter saw Sheppard standing in the narrow space that a person on top of the freight car could have seen him. Frank Carter was only four feet above and in line with George Sheppard, but a man on top of the freight car would not have been in the same favorable position for seeing George Sheppard as was Frank Carter. The court is of the opinion that the evidence is insufficient to support the verdict and judgment.

On account of the error indicated the judgment is reversed, and the cause is remanded for a new trial.