CARMICHAEL *v.* LITTLE ROCK HOUSING AUTHORITY.

5-1154                                                          299 S. W. 2d 198

Opinion delivered March 4, 1957.

*Fred A. Newth, Jr.* and *Kenneth Coffelt,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

MINOR W. MILLWEE, Associate Justice. Plaintiff, Jewell Carmichael, brought this action against Little Rock Housing Authority to recover damages for the death of Lonnie Carmichael, her minor son (seven years and eleven months old), who was drowned in a pond on land owned by the defendant corporation on August

13, 1955. At the conclusion of plaintiff's proof, and upon additional facts stipulated by the parties, the trial court sustained defendant's motion for a directed verdict. We must decide whether the pond in question constituted an attractive nuisance under the undisputed facts.

In August, 1955, plaintiff and her three minor children lived on that part of U. S. Highway 65 known as Confederate Boulevard which runs along the Eastern side of the City of Little Rock. Plaintiff's home was about 30 feet from the street and about 150 yards from the pond located on lands acquired by defendant four months before the accident. There was a vacant house and a railroad spur track between plaintiff's home and the pond. There were two grocery stores nearby and families with children lived along the highway and on the 38th Street which ran East from the highway.

While the origin of the pond was not shown, it had been in existence for at least 50 years and plaintiff testified, without objection, that a 66-year-old neighbor told her it was there before he was born and that he swam in it in 1906. It is in a sunken area and is lined with large sweet gum trees and smaller willow trees. There is a large rock at the East edge and small fish live in the pond. While plaintiff would not say positively that it was fed by springs, she felt "there was bound to be everlasting water there" since it did not go dry in periods of drouth. The pond is unenclosed and children from the heavily populated area congregate there in the shade of the trees and on the large rock to watch and throw rocks at the fish. Parents in the vicinity caution their children against playing around the pond but have difficulty keeping them away.

Plaintiff and a married daughter living with her at the time were away from home on August 13, 1955, but had left Mr. Shirly, a boarder, to look after the three children. About 1:30 p. m. one of Lonnie's young companions ran from the pond and told a neighbor, "Lonnie is drowning." The child's body was found at the

bottom of the middle of the pond which is about 35 feet wide and about 60 feet long.

Although it is rejected by some courts, we adhere to the attractive nuisance doctrine or, as it is sometimes called, the "turntable doctrine" in this state. Broadly stated, the doctrine embraces the proposition that one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. 38 Am. Jur., Negligence, Sec. 142.

We have frequently approved the following statement by Judge Hughes, speaking for the court, in *Brinkley Car Co.* v. *Cooper,* 60 Ark. 545, 31 S. W. 154, 46 Am. St. Rep. 216: "The owner of land is not required to provide against remote and improbable injuries to children trespassing thereon. But he is liable for injuries to children trespassing upon his private grounds, when it is known to him that they are accustomed to go upon it, and that, from the peculiar nature, and exposed and open condition, of something thereon, which is attractive to children, he ought reasonably to anticipate such an injury to a child as that which actually occurs." See also, *Foster* v. *Lusk,* 129 Ark. 1, 194 S. W. 855, and cases there cited. The mere fact that a thing is attractive to children is not of itself a ground for invoking the attractive nuisance doctrine. *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A. (N. S.) 1020.

Although similar cases have frequently engaged the attention of other courts, we have never determined whether the attractive nuisance doctrine is applicable to a pond under a situation similar to that presented here. "The attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in the absence of some unusual condition or artificial feature other than the mere water and its lo-

cation.'' 65 C. J. S., Negligence, Sec. 29 (12) j. The weight of authority in this country is to the effect that ponds, lakes, streams, reservoirs, and other bodies of water do not constitute an attractive nuisance in the absence of any unusual element of danger. See 56 Am. Jur., Waters, Sec. 436, where the textwriter further says: ''In some cases, the view has been taken that the proprietor may be held liable where some additional or unusual element of danger is involved in the situation as where the pond or pool is in close proximity to a highway or a playground, or where it is located in an urban or densely populated community, but the weight of authority appears to hold to the contrary, except where the facts bring the case within the rule respecting pitfalls or hazards adjacent to highways.'' See also, Restatement of Torts, Sec. 339. Numerous cases on the question are collected in annotations in 36 A. L. R. 34, 39 A. L. R. 486, 45 A. L. R. 990, 53 A. L. R. 1355 and 60 A. L. R. 1453.

Since water hazards exist everywhere, the tendency of a majority of the courts which recognize the attractive nuisance doctrine under other circumstances, is to refuse to apply it to permit recovery for the drowning of a child in a pond or other body of water unless it constitutes a trap or there is some other hidden inherent danger. Many cases to that effect are collected in an exhaustive annotation on the subject in 8 A. L. R. 2d 1259. A few such cases are: *Athey* v. *Tennessee Coal, Iron & R. Co.,* 191 Ala. 646, 68 So. 154; *McCall* v. *McCallie,* 48 Ga. App. 99, 171 S. E. 843; *Dennis* v. *Spillers,* 199 Okla. 311, 185 P. 2d 465; *Morris* v. *Britton,* 66 S. D. 121, 279 N. W. 531; *Fiel* v. *City of Racine,* 203 Wis. 149, 233 N. W. 611, 30 N. C. C. A. 297; *Peters* v. *Bowman,* 115 Cal. 345, 47 P. 113; *Phipps* v. *Mitze,* 116 Colo. 288, 180 P. 2d 233; *Stendal* v. *Boyd,* 67 Minn. 279, 69 N. W. 899; *Riggle* v. *Lens,* 71 Or. 125, 142 P. 346.

A variety of reasons have been assigned for the majority rule. First is the difficulty of placing any practical limitation upon such liability, which is also denied for the reason that the danger inherent in water in a pond is or should be obvious to a child. There is

also a disinclination on the part of courts to shift the duty of caring for their children from the parents to the owners of such hazards. There is also the impracticability of guarding or fencing against a hazard of this kind. As the court said in *Emond* v. *Kimberly-Clark Co.*, 159 Wis. 83, 149 N. W. 760: "The world cannot be made danger proof — especially to children. To require all natural or artificial streams or ponds so located as to endanger the safety of children to be fenced or guarded would in the ordinary settled community practically include all streams and ponds—be they in private parks or upon private soil,—for children are self-constituted licensees if not trespassers everywhere. And to construct a boy-proof fence at a reasonable cost would tax the inventive genius of an Edison."

Notwithstanding the weight of authority to the contrary, a few jurisdictions hold that an ordinary pond, artificially created, can constitute such an attractive nuisance as to impose liability on the landowner for the drowning of a child therein. *Franks* v. *Southern Cotton Oil Co.*, 78 S. C. 10, 58 S. E. 960; *Allen* v. *McDonald Corp.*, (Fla.) 42 S. E. 2d 706. Since the only evidence on the point indicates we are dealing with a natural condition in the case at bar, it is unnecessary to determine whether we would subscribe to this minority view under the same state of facts. Plaintiff also relies on our own decision in *Brinkley Car Co.* v. *Cooper, supra,* where a six-year-old boy was burned by stepping into an unguarded pool of hot water covered with debris, and which the defendant created by draining its boilers in the operation of its manufacturing plant. That case involved unusual elements of danger and artificial features which point up the natural characteristics of the pond involved in the instant case. This pond is not unusually dangerous and contained no trap or hidden hazard which the immature mind would be unlikely to appreciate.

The drowning of a child of tender years is a most regrettable tragedy. In determining a claim of legal responsibility for such a deplorable misfortune it is diffi-

ᴄult to resist the temptation to substitute sentiment for law and reason. But under applicable legal principles there can be no recovery for the unfortunate death of plaintiff's intestate on the facts presented. The judgment is accordingly affirmed.