671 F.2d 1146
 1982-1 Trade Cases 64,566
 MASON CITY CENTER ASSOCIATES and Beaver Farms, Inc.,
Appellants/Cross-Appellees,
v.
The CITY OF MASON CITY, IOWA; Kenneth Kew; Virgil DeVary;
Dr. Stanley Romans; Marlys Shima; Roger Pedelty; Larry
Jarvill; Harlan Johnson; Holmen Development Company; and The
Ericson Development Co., Inc., Appellees/Cross-Appellants.
 Nos. 81-1249, 81-1302.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1981.
Decided March 1, 1982.
 
 H. Richard Smith (argued), Edward W. Remsburg, Des Moines, Iowa, B. Michael Dunn, Mason City, Iowa, for the City of Mason City, Iowa, et al.; Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, Iowa, of counsel.
 George F. Karch, Jr. (argued), Thomas J. Collin, Cleveland, Ohio, Gregory M. Lederer, Cedar Rapids, Iowa, for Mason City Center Associates, et al.; Thompson, Hine & Flory, Cleveland, Ohio, Simmons, Perrine, Albright & Elwood, Cedar Rapids, Iowa, of counsel.
 Stuart L. Finney (argued), Fuller & Finney, Bloomington, Minn., Ralph W. Gearhart, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for Holmen Development Co.
 James L. Wahlfors, Thomson, Lovett, Wahlfors & Moran, Ltd., James W. Meunier, Bloomington, Minn., for Ericson Development Co., Inc.
 Before LAY, Chief Judge, HENLEY and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Plaintiffs Mason City Center Associates ("Associates"), and Beaver Farms, Inc., filed an action against the City of Mason City, Iowa, members of the City Council, and two corporations, alleging that defendants agreed, combined, and conspired to prevent appellants from developing a regional shopping center on the west edge of the City by refusing to rezone the property to commercial use. Appellants based their action on alleged violations of the Sherman Antitrust Act, the Iowa law of unfair competition, and Iowa zoning laws. The City counterclaimed, alleging tortious interference with its business relationships. A jury found against Associates on the main claim and awarded the City $250,000 on its counterclaim. We affirm the judgment, with the exception of the award of damages on the counterclaim.
 
 I.
 
 2
 The subject of the action by Associates, a real estate development partnership formed in November, 1977, was approximately 58 acres of land within the City of Mason City at the west edge. Twenty-three acres of the property were zoned for business, a classification which permitted the construction of a shopping center. Another 35 acres were zoned for agricultural purposes, and no shopping center could be built on this portion of the tract.
 
 
 3
 In September, 1976, an application was filed by the then owner of the property to rezone the agricultural portion of the site to commercial. Following a public hearing on October 28, 1976, the Mason City Planning and Zoning Commission unanimously voted to deny the request. The application was withdrawn in November, 1976, before the City Council was able to vote on it.
 
 
 4
 Another application to rezone the land was submitted on October 13, 1977. A public hearing was scheduled for December 22, 1977, but was continued to January 26, 1978, at the applicant's request. On that date, a public hearing was held, and the Planning and Zoning Commission voted unanimously to deny the application. It was later withdrawn by the applicant on February 1, 1978. Nine days later, an application for rezoning the property was again filed but was withdrawn on February 27, 1978, prior to any action by the Planning and Zoning Commission.
 
 
 5
 On August 18, 1978, an application was filed on behalf of Beaver Farms, Inc., owner of the land, seeking to rezone the entire tract from agriculture and business to commercial, single family, and apartments. After supplements to the application were submitted, a public hearing was scheduled for September 28, 1978. At the applicant's request, the hearing was continued to October 12, 1978. On that date, the hearing was held, and the Planning and Zoning Commission voted unanimously to deny the application. On November 6, 1978, the issue was presented to the City Council and, after a hearing and discussion, the Council voted unanimously to follow the recommendation of the Planning and Zoning Commission and deny the rezoning request. This denial precipitated plaintiffs' action.
 
 
 6
 In 1943, Mason City adopted its first Comprehensive Plan, which offered a framework for regulation of land uses in the community. The plan's purpose was to insure that growth and development in the City occurred in an orderly fashion. In 1965, the plan was revised, and it remains in effect, in amended form, to the present time. Both versions of the plan stressed the development of a compact central business district, and the 1965 plan suggested that there be no construction of regional shopping centers on the edges of the City.
 
 
 7
 Starting in 1972, the City began accumulating federal funds for its downtown redevelopment project pursuant to the Comprehensive Plan. In June, 1977, the City Council selected the Holmen Development Company as the developer for the downtown project, which was known as the Southbridge Mall Project. Holmen's initial task was to obtain commitments from major tenants to locate in a regional shopping center in the central business district. Over the next six months, however, Holmen encountered difficulties in securing commitments from major tenants. Subsequently, in December, 1977, the company entered into a joint agreement with another developer, the Ericson Development Company. Ericson became responsible for total development of the project, including leasing and financing work in cooperation with the City's staff.
 
 
 8
 In July, 1978, the City entered into a preliminary development agreement with Holmen and Ericson for the development of the Southbridge Mall Project. The purpose of the agreement was to provide a document that could be exhibited to major tenants as evidence of a legally binding agreement between the City and the developers. The agreement contained a statement by Mason City affirming "its policy to discourage any development contrary to the stated objectives of the City's comprehensive plan regarding a downtown development." Tr. 99. Plaintiffs' claim of an anticompetitive conspiracy has its basis in this language of the preliminary development agreement.
 
 
 9
 On September 12, 1978, a public election was held on the issue of whether bonds should be sold by the City for the specific purpose of funding the Southbridge Mall Project. Prior to the election, there was considerable public discussion and debate on the issue, and advertisements were carried in the local media in opposition to the downtown project and favoring development of the west side of the City. On election day, however, the voters of Mason City approved the bond issue by a substantial margin, with approximately 65 per cent. voting in favor of issuance of bonds for the downtown redevelopment project.
 
 
 10
 Despite the outcome of the referendum, Associates continued to seek to construct its proposed shopping center on the land owned by Beaver Farms, Inc. When Beaver Farms' application for rezoning was denied by the City Council on November 6, 1978, Associates and Beaver Farms brought this action for monetary and injunctive relief on November 13, against the City of Mason City, City Council members, the Holmen Development Company, and the Ericson Development Company. They alleged generally that the rezoning request was denied by city officials in furtherance of an anticompetitive agreement with Holmen and Ericson to exclude competing shopping-center developments from Mason City.[1] The defendants filed a preliminary motion to dismiss the complaint for failure to state a claim, which was denied by the District Court.[2] Motion for summary judgment was also denied. The City subsequently filed a counterclaim against Associates[3] alleging that its actions constituted a tortious interference with the City's business relationships and asked for $1,013,061 in damages. After trial before a jury, the City was awarded $250,000. The District Court denied Associates' motion for a judgment n.o.v. and, alternatively, a new trial.
 
 
 11
 On appeal, plaintiffs argue that the District Court erred in (1) failing to exclude the testimony of members of the City Council, (2) failing to direct a verdict in plaintiffs' favor on the issue of liability, (3) alternatively, not granting plaintiffs' motion for a new trial, and (4) submitting the City's counterclaim to the jury.
 
 
 12
 The City cross-appeals the District Court's denial of its motions to dismiss and for summary judgment.
 
 II.
 
 13
 We first consider plaintiffs' contention that the District Court should have excluded the testimony of the members of the Mason City City Council. They argue that the testimony is not relevant to the issue of the City's liability for violation of the Sherman Act. Here, however, the evidence is relevant at least on the issue of causation. The Council members insisted that they had voted to deny the plaintiffs' rezoning application because of their views on the propriety of downtown as opposed to suburban development, and because of their desire to adhere to the previously adopted comprehensive plan. The agreement with Holmen and Ericson, they said, was not the reason for their vote. Thus, even if the agreement was illegal, it was not the cause of the denial of Associates' application and could not be the legal source of Associates' damages. That, at any rate, was one of the theories of defense, and the City was entitled to offer evidence to support it. Evidently the jury accepted this theory, or some variation thereof, and on this record, giving defendants the benefit of all reasonable inferences, we think the jury was within its rights.
 
 
 14
 We have considered the additional reasons offered by plaintiffs in support of their contention that the District Court should have granted their new-trial motion. Because plaintiffs have not made a clear showing of abuse of discretion on the part of the trial court, its denial of their motion for a new trial must be upheld. See Commercial National Bank v. Missouri Pacific Railroad, 631 F.2d 563, 565 (8th Cir. 1980).
 
 III.
 
 15
 Plaintiffs' final contention is that the District Court erred in submitting the City's counterclaim to the jury. In its counterclaim, the City alleged that Associates intentionally interfered with the business relationship between the City and the Holmen Development Company.[4] The City sought more than $1,000,000 in damages, and the jury ultimately awarded $250,000.
 
 
 16
 Associates argues, on several grounds, that the evidence of its liability was insufficient to make a jury case. It also asserts that the City's claim that it was damaged was too speculative. The evidence that Associates did anything beyond legitimately competing for the shopping center is thin, to say the least, but we need not decide whether the City made a submissible case on the issue of liability on the counterclaim, because the evidence of damages was insufficient as a matter of law.
 
 
 17
 Under Iowa law, which governs here, recovery is denied "(i)f it is speculative and uncertain whether damages have been sustained .... If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." DeWaay v. Muhr, 160 N.W.2d 454, 460 (Iowa 1968). In this case, the City's claim of damages is based on the allegation that Associates' interference caused the City to delay "about one year" in selling bonds to finance its share of expenses in completing the Southbridge Mall Project. Tr. 259. The evidence indicates, however, that the City made no actual attempt to sell the bonds and, therefore, did not incur the interest costs that it used to calculate its damages of $1,013,061. Tr. 310-13. Nor do we know what the interest costs would be if the bonds are sold in the future. For this reason, the award is highly speculative and must be reversed.
 
 IV.
 
 18
 The City filed a cross-appeal contending that the District Court erred in denying its motion to dismiss plaintiffs' complaint and in denying its motion for summary judgment. Because of the nature of our disposition of this case, we see no need to decide the issues raised by the cross-appeal.[5]
 
 
 19
 The judgment dismissing the complaint is affirmed. The judgment on the counterclaim is reversed, and the cause remanded with directions to dismiss the counterclaim with prejudice.
 
 
 20
 It is so ordered.
 
 
 
 [1]
 The complaint, in six counts, alleged a combination and conspiracy unreasonably restraining trade in interstate commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; a group boycott in violation of Section 1 of the Sherman Act; an attempt to monopolize the relevant market in violation of Section 2 of the Act, 15 U.S.C. § 2; violation of Sections 4 and 5 of the Iowa Competition Law, Iowa Code Ann. §§ 553.4 and 553.5 (West Supp.1981); and violation of Iowa zoning laws
 
 
 [2]
 The Hon. Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa. The opinion is reported at 468 F.Supp. 737 (N.D.Iowa 1979)
 
 
 [3]
 Beaver Farms was not named a defendant in the counterclaim
 
 
 [4]
 The City specifically alleged that Associates,
 its members and employees, intentionally, improperly, and without justification interfered with the performance of the business relationship between the City and Holmen by causing, and conspiring to cause, J. C. Penney Co. not to give a good faith consideration to the downtown redevelopment project; by creating, and conspiring to create, the illusion that J.C. Penney Co. had given a good faith consideration to the downtown redevelopment project prior to rejecting it, knowing the inhibiting effect such an illusion would have on the efforts to interest other prospective tenants in the project; and by otherwise causing Holmen not to perform and carry out the business relationship as contemplated and expected.
 D.R. 70.
 
 
 [5]
 If we were to consider the question of whether the City's action in refusing to rezone plaintiffs' property is protected by the "state action" exemption to the federal antitrust laws, our decision would be governed by the Supreme Court's recent ruling in Community Communications Co. v. City of Boulder, --- U.S. ----, 102 S.Ct. 835, 70 L.Ed.2d ---- (1982) (antitrust laws apply to municipalities not acting in furtherance of clearly articulated and affirmatively expressed state policy). Under this ruling, it appears that the District Court, when it rejected the state-action defense, accurately predicted the future course of the law