

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

**No.** CV-16-305

| | |
|---|---|
| | **Opinion Delivered** June 21, 2017 |
| BRYAN L. POWELL, IN HIS CAPACITY AS SPECIAL ADMINISTRATOR OF THE ESTATE OF AALYAH JERWAN, DECEASED, AND JELINA LEWIS, IN HER CAPACITY AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF AALYAH JERWAN, DECEASED | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72-15-1495] |
| | HONORABLE DOUG MARTIN, JUDGE |
| | AFFIRMED |
| APPELLANTS | |
| V. | |
| ISC NORTH, LLC, ET AL. | |
| APPELLEES | |

## DAVID M. GLOVER, Judge

This appeal arises from the trial court's summary judgment against consolidated complaints filed on behalf of the estate of a young girl who drowned in a pond located in Washington County. We affirm the dismissal.

On September 1, 2012, Aalyah Jerwan drowned in a retention pond located on private property. She was twelve years old at the time. Two lawsuits were filed with respect to Aalyah's death—one by Special Administratrix Jelina Lewis (CIV-2015-1485-4) and the other by Special Administrator Bryan L. Powell (CIV-2015-1495-1). The original complaints were filed in August 2015 against ISC North, LLC; ISC South, LLC; Joe

Edwards; Joe Edwards, as trustee of the Joe Edwards Revocable Trust, as amended and restated u/t/d November 5, 2007; and several other named defendants. The complaints were virtually identical and alleged the defendants were responsible for the wrongful death of Aalyah. The complaints were based on the attractive-nuisance doctrine and negligence. The administrators of Aalyah's estate subsequently moved to consolidate the two cases, and the court allowed it.

On October 19, 2015, after the consolidation order had been entered, the defendants answered the complaint and moved to dismiss the case pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. They contended the complaint failed to state a claim upon which relief could be granted because a pond is not an attractive nuisance under Arkansas law, and as a result, there was no legal duty owed to Aalyah. They further asserted that any cause of action would be barred by landowner immunity under Arkansas Code Annotated section 18-11-305 (Repl. 2015).

On November 16, 2015, the administrators amended their complaint to allege that a partially submerged truck-bed liner located at the edge of the pond had created a trap or hidden inherent danger and that defendants were negligent in placing the truck-bed liner there, or at least in allowing the submerged truck-bed liner to remain in the pond, when they knew or should have known that children went onto the property and played in and around the pond where the truck-bed liner was located. On the same date, the administrators responded to the defendants' motion to dismiss. They submitted supporting documents (photographs of the pond and truck-bed liner, a police report, and defendants' answers to requests for admission), explained how they had stated claims for which relief

could be granted under Arkansas law, and stated that a jury should determine any unanswered material fact questions that this case presented.

On November 24, 2015, the defendants filed an answer and moved to dismiss the amended complaint pursuant to Rule 12(b)(6). They argued that "because a pond and truck bed liner are not attractive nuisances under Arkansas law," and "[i]n addition, any cause of action is barred by landowner immunity" pursuant to Arkansas Code annotated section 18-11-305, the case should be dismissed.

On December 7, 2015, the administrators responded to the motion to dismiss the amended complaint, essentially reasserted their position that whether the truck-bed liner functioned as a trap or hidden danger was a question for the jury, and explained why the recreational-use immunity statute did not apply.

On January 14, 2016, the trial court dismissed the amended complaint, "after having reviewed the pleadings and briefs filed by the parties, based on the reasons set forth in the motion and supporting briefs." This appeal followed, with the administrators contending the trial court erred in dismissing their consolidated complaints because genuine issues of disputed material facts existed regarding the application of the attractive-nuisance doctrine and the alleged negligence of appellees; they also contested whether the recreational-use statute could apply under these circumstances. We affirm the dismissal.

According to the facts alleged in the pleadings and exhibits the administrators submitted with their responses to the motions to dismiss, on the day Aalyah drowned, she was playing "tag" with other children on and around a truck-bed liner that was partially submerged in the retention pond. She was "tagged" by a playmate, fell in the deeper water

surrounding the liner, and drowned. The pond was located in a vacant lot about 700 feet from the apartment complex where Aalyah lived in Springdale, Arkansas. According to the administrators' theory of the case, Aalyah and the other children were attracted to the truck-bed liner, and the "bed liner conveyed a definitive message, and that message was incorrect, misleading and deadly to Aalyah," i.e., that the pond was shallower near the bed liner than it actually was. Aalyah's body was recovered from the pond in six to seven feet of water approximately fifteen feet north of the spot on the south bank where the truck-bed liner was located. According to a police report, which was not objected to when submitted in response to the motion to dismiss, there were footprints around the area where the truck-bed liner was located, and the water near the liner was muddier than the rest of the pond.

The administrators alleged that the defendant landowners negligently allowed a partially submerged truck-bed liner to remain in the pond, creating the illusion that the pond was shallower than it really was, and that Aalyah was not aware of the hazardous condition and ultimately fell into the deep area and drowned. As we have mentioned, they asserted liability based on the attractive-nuisance doctrine and general negligence.

The summary disposal of this case was initiated with a Rule 12(b)(6) motion. The order of dismissal merely states: "[A]fter having reviewed the pleadings and briefs filed by the parties, based on the reasons set forth in the motion and supporting briefs, the court finds that the Motion to Dismiss Amended Complaint should be and hereby is granted." The parties agree, however, that the Rule 12(b)(6) motion was converted to an issue of summary judgment because the trial court was also presented with evidentiary items that were not expressly excluded.

In reviewing summary-judgment cases, our court need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003). The moving party always bears the burden of sustaining a motion for summary judgment. *Id.* All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id.* The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. *Id.* However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Id.* We have further stated that summary judgment should not be granted when reasonable minds could differ as to the conclusions that can be drawn from the facts presented. *Id.* The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *Johnson v. DeKros*, 2014 Ark. App. 254, 435 S.W.3d 19.

For the first point of appeal, the administrators contend the trial court erred in concluding the attractive-nuisance doctrine did not apply to this case. We disagree.

The administrators contend that they were pursuing two "independent but complementary elements" of the attractive-nuisance doctrine: 1) that the bed liner itself,

resting on the pond, was an attractive nuisance and 2) that the pond contained a trap or hidden danger in the form of the bed liner and its positioning on the pond that allowed recovery as an attractive nuisance. In other words, this case does not involve a body of water "by itself"; it involves an additional element of attraction (the liner), and it also involves a hidden danger or trap (the liner). We are not persuaded that the truck-bed liner itself was the attractive nuisance. Therefore, we will concentrate on the liner/pond combination because that is what this case is really about.

In *Carmichael v. Little Rock Housing Authority*, 227 Ark. 470, 472, 299 S.W.2d 198, 199 (1957), our supreme court explained the attractive-nuisance doctrine:

> Broadly stated, the doctrine embraces the proposition that one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction.

The *Carmichael* court was confronted for the first time with the issue of "whether the attractive nuisance doctrine [was] applicable to a pond under a situation similar to that presented here." *Id.* The pond in *Carmichael* had existed for at least fifty years; it was lined with sweet gum trees and smaller willow trees; there was a large rock at the eastern edge; small fish lived in the pond; it was unenclosed and children from the heavily populated area congregated there in the shade of the trees and on the large rock to watch and throw rocks at the fish; and while parents in the area cautioned their children against playing around the pond, they had difficulty keeping them away. The court explained that the

> weight of authority in this country is to the effect that ponds, lakes, streams, reservoirs, and other bodies of water do not constitute an attractive nuisance in the absence of any unusual element of danger. See 56 Am. Jur., Waters, Sec. 436, where

the textwriter further says: 'In some cases, the view has been taken that the proprietor may be held liable where some additional or unusual element of danger is involved in the situation as where the pond or pool is in close proximity to a highway or a playground, or where it is located in an urban or densely populated community, but the weight of authority appears to hold to the contrary, except where the facts bring the case within the rule respecting pitfalls or hazards adjacent to highways.'

Since water hazards exist everywhere, the tendency of a majority of the courts which recognize the attractive nuisance doctrine under other circumstances, is to refuse to apply it to permit recovery for the drowning of a child in a pond or other body of water unless it constitutes a trap or there is some other hidden inherent danger.

*Id.* at 473, 299 S.W.2d at 200 (citations omitted). The court concluded that since the evidence indicated they were dealing with a natural condition in the case at bar, it was unnecessary to determine whether the court would subscribe to the minority view, in which "a few jurisdictions hold that an ordinary pond, artificially created, can constitute such an attractive nuisance as to impose liability on the landowner for the drowning of a child therein." *Id.* at 474, 299 S.W.2d at 200. The court distinguished its earlier case of *Brinkley Car Works & Manufacturing Co. v. Cooper*, 60 Ark. 545, 31 S.W. 154 (1895), explaining that it "involved unusual elements of danger and artificial features which point up the natural characteristics of the pond involved in the instant case. This pond [in *Carmichael*] is not unusually dangerous and contained no trap or hidden hazard which the immature mind would be unlikely to appreciate." *Carmichael*, 227 Ark. at 474, 299 S.W.2d at 200–01.

In the *Brinkley* case, the court reversed a plaintiff's judgment and remanded the case for a new trial based on erroneous instructions given to the jury. The surrounding facts of the six-year-old plaintiff's scalding injuries were in part:

The appellee, who was about six years old, play[ed] around it, walked into the water, and was scalded.

7

SLIP OPINION

It was shown that the mill and the pool were on the private grounds of the appellant, and were about 300 feet from the nearest street or traveled way in the town of Brinkley. It was also shown that children sometimes played, on Sundays, on the pile of sawdust at the mill, which was about 150 feet from the water; that this reservoir might have been covered without inconvenience. There was some evidence tending to show that children were not allowed to play around the sawdust pile, and that they had not, before the day of the injury, ever been seen at the pool; that the pool was partially covered with bark, but that the water was clear, and could be seen; that no pathway ran over these grounds. It was not alleged in the complaint, or shown in the evidence, that this pool of water was known to children before the day of the injury, or that it or its immediate surroundings were attractive to children.

The complaint alleged "that defendant negligently and carelessly failed and neglected to cover and [e]nclose said pit, or post any notices or sign indicating that it contained boiling water, but negligently and carelessly and wantonly deposited in said pit pieces of bark from the logs or timber brought to its yards, which said pieces of bark congregated and floated so thickly on the top of the boiling water in said pit that persons passing near it could not see the water in said pit," and then that the plaintiff, not being able to see the water, walked into it, and was scalded.

It appeared that when the watchman let the water out of the boiler his little son and the plaintiff were present, and that he cautioned them not to go about the water, as it was hot.

60 Ark. at 546, 31 S.W. at 154. The *Brinkley* court went on to explain:

The jury should have been instructed in this case that in determining whether the defendant was liable or not for the injury received by the child, they should consider whether it appeared from the evidence that the pool of water in which he was scalded was attractive to children of the age of appellee, and whether this was or ought to have been known to the appellant, and whether, from all the circumstances in evidence, it appeared that the appellant, as a reasonably prudent person, ought to have anticipated that children of the age of the plaintiff would probably receive such injury as the plaintiff did receive, by reason of the situation and condition of the pool of water at the time the plaintiff received his injury. Children are required to exercise only such care and prudence as may reasonably be expected of those who possess only the intelligence and maturity of judgment which they possess. The owner of land is not required to provide against remote and improbable injuries to children trespassing thereon. But he is liable for injuries to children trespassing upon his private grounds, when it is known to him that they are accustomed to go upon it, and that, from the peculiar nature, and exposed and open condition, of something thereon, which is attractive to children, he ought reasonably to anticipate such an injury to a child as that which actually occurs.

SLIP OPINION

      "It would put the proprietors of real estate under an oppressive burden, to make them insurers against remote and improbable injuries to children while trespassing thereon."

60 Ark. at 548–49, 31 S.W. at 155 (citations omitted).

      In *Jones v. Comer*, 237 Ark. 500, 374 S.W.2d 465 (1964), our supreme court affirmed the grant of summary judgment in a situation involving three children who had drowned in a pond. The case highlights the general rule that bodies of water do not constitute an attractive nuisance in the absence of any unusual element of danger; noting, however, that if a pond or other body of water constituted a trap or there was some other hidden inherent danger, the attractive-nuisance doctrine would apply. The court considered whether a bag swing located 150 feet north of the pond or an old boat located on the opposite shore of where the bodies were found constituted traps or hidden dangers. The court noted that nothing indicated the boat or bag swing contributed to the tragedy but that "even if" it could be said they were instrumental in attracting the children to the pond to play, "still that would not be sufficient to make applicable the attractive nuisance doctrine." *Id.* at 505, 374 S.W.2d at 468. The opinion then listed several cases from other jurisdictions holding the attractive-nuisance doctrine inapplicable—some of which involved floating rafts, boards, logs, and planks that children slipped off and into the water. The supreme court concluded that the facts of the *Comer* case did not bring it within the attractive-nuisance doctrine and affirmed the summary judgment.

      This appeal boils down to whether the partially submerged truck-bed liner sufficiently obscured the nature of the otherwise open-and-obvious pond to create a jury question on whether it constituted a dangerous instrumentality that was attractive to

children and about which they could not have realized or appreciated the danger. We have concluded it did not, and the trial court did not err in dismissing this case. The truck-bed liner, although partially submerged, was not hidden, and it did not mask the inherently dangerous nature of the pond, which was open and obvious.

For their second point of appeal, the administrators contend that the trial court also erred in dismissing the complaint's negligence claims. We disagree.

There are three general categories of entrants upon the land of another: trespassers, licensees, and invitees. *Bader v. Lawson*, 320 Ark. 561, 898 S.W.2d 40 (1995). The administrators of Aalyah's estate argue that questions of fact existed regarding her status as a licensee because the defendants knew or reasonably should have known that children frequented the premises because the pond was located approximately 700 feet from an apartment complex where young children played, and the land owners did nothing to prevent, deter, or keep the children off the premises. They further argue that these questions of fact relate to the duty owed to Aalyah because if the jury were to find that she was a licensee on the property, the duty owed would be reasonable care and there would also be questions of fact regarding whether the property owners breached their duty to her by not taking measures to secure the area.

The problem here is that even if the jury were to conclude that Aalyah was a licensee rather than a trespasser, a question we do not decide, the facts presented to the trial court still support its dismissal of the negligence claims. A licensee is one who goes upon the premises of another with the consent of the owner for one's own purposes and not for the mutual benefit of oneself and the owner. *Bader, supra.* No duty is owed a licensee until the

licensee's presence on the property is known or reasonably should be known, *Kirkwood v. Dial*, 2013 Ark. App. 536, and once the presence is known, the duty owed to the licensee is to refrain from injuring the licensee through willful or wanton conduct. *Id.* To constitute willful or wanton conduct, there must be a course of action that shows a deliberate intent to harm or utter indifference to, or conscious disregard of, the safety of others. *Id.* If the landowner knows or has reason to know of a condition on the premises that is not open and obvious and that creates an unreasonable risk of harm to the licensee, the landowner is under the duty to use ordinary care and to make the condition safe or to warn those licensees who do not know or have reason to know of the danger. *Id.*

Here, the proof submitted to the trial court did not establish that the landowners knew or should have known Aalyah and the other children were on the property. Moreover, even if that fact had been established, for the reasons previously discussed with respect to the inapplicability of the attractive-nuisance doctrine, there was no condition on the land that was not open and obvious. Consequently, even if Aalyah were found to be a licensee, the duty owed to her was to refrain from causing her injury by willful or wanton conduct. No allegations of willful or wanton conduct by the defendant landowners were pleaded. No proof of such conduct was presented to the trial court. We therefore find no basis to reverse the trial court's dismissal of the negligence claims.

Finally, because we have found no error in the trial court's judgment against the attractive-nuisance and negligence claims for the reasons previously discussed, it is not necessary to address the landowners' alternative contention that those claims would nevertheless fail under the immunity provided to landowners under Arkansas Code

11

Annotated section 18-11-305, which is part of the Arkansas Recreational Use Statutes. Ark. Code Ann. §§ 18-11-301 to -307.

Affirmed.

ABRAMSON, HARRISON, and HIXSON, JJ., agree.

VIRDEN and MURPHY, JJ., dissent.

**BART F. VIRDEN, judge, dissenting.** I respectfully dissent because I believe that the trial court erred in granting summary judgment regarding the issue of the presence of a trap or hidden and inherent danger, and I disagree with the conclusion that there was no evidence to support the existence of a duty owed by ISC to Aalyah Jerwan.

### I. *Attractive Nuisance*

I agree with the majority that the crux of this appeal is whether the submerged truck-bed liner obscured the nature of the retention pond; however, I believe that the appellants presented facts sufficient to give rise to a question for the jury regarding whether the submerged truck-bed liner constituted a dangerous instrumentality that was attractive to children and about which they could not realize the danger.

The majority states that the truck-bed liner was partially submerged, though not entirely hidden and that "it did not mask the inherently dangerous nature of the pond, which was open and obvious." Herein lies the substance of this dissent: whether the partially visible truck-bed liner, which created an ideal place for children to play, was the condition to which the children were specifically attracted, and whether the truck-bed liner created the dangerous illusion of shallow water where the water was deep—a hidden danger that

was not open and obvious. I believe that the appellants provided sufficient proof to raise that question to a jury.

Many of the following facts are stated in the majority opinion; however, they bear repeating. It is undisputed that the Crutcher Street Apartments, where many children live, are located about 700 feet from the pond. Appellants presented photographs showing the bed liner and the deceptively shallow appearance created by the bed liner. A police-report transcript of the call requesting that a water rescue was needed sets forth that "[t]here is a truck-bed liner over here, looks like they were playing on it." Another police report states that Aalyah's body was found in six to seven feet of water, fifteen feet north of the spot on the south bank where the bed liner was positioned. The officer stated that the pond was large and murky, particularly so around the truck-bed liner. In the report, the officer noted footprints around the bed liner. Another report sets forth that "by all accounts" the children were playing tag in the shallow edge of the water. There were differing accounts of how Aalyah came to fall into the deeper water; however, any discrepancy in the testimony would be for the jury to weigh. *See Aronson v. Harriman*, 321 Ark. 359, 374, 901 S.W.2d 832, 840 (1995) (It is within the province of the jury to weigh the credibility of the witnesses.).

The majority holds that "the truck-bed liner, although partially submerged, was not hidden, and it did not mask the inherently dangerous nature of the pond, which was open and obvious." By contrast, I would hold that a reasonable conclusion a jury could reach is that the partially submerged truck-bed liner constituted a hidden trap or danger by creating the illusion of safe, shallow water where the water was deep and that the truck-bed liner itself was specifically sought out by the children playing on the lot.



I cannot foresee what a jury would conclude; I can only say that it is the province of a jury to decide the questions raised by the facts of this case. Given that reasonable minds could differ as to the conclusions that can be drawn from the facts presented, summary judgment should not have been granted in regard to the attractive nuisance claim.

## II. *Negligence*

The majority states that even if the jury had concluded that Aalyah was a licensee rather than a trespasser, the facts presented to the trial court still support its dismissal of the negligence claims. I respectfully disagree with this holding.

Appellants presented sufficient evidence to support the existence of a duty owed by ISC to Aalyah. I will base my discussion of negligence on the assumption that she was a licensee rather than a trespasser, as I believe it is clear that a jury could find that Aalyah was a licensee.

It is helpful to restate the duty of care owed to a licensee. In *Bader v. Lawson*, 320 Ark. 561, 564–65, 898 S.W.2d 40, 42–43 (1995), our supreme court set forth that

> [a] landowner owes a licensee the duty to refrain from injuring him or her through willful or wanton conduct. To constitute willful or wanton conduct, there must be a course of action which shows a deliberate intention to harm or utter indifference to, or conscious disregard of, the safety of others. If, however, a landowner discovers a licensee is in peril, he or she has a duty of ordinary care to avoid injury to the licensee. The duty takes the form of *warning a licensee of hidden dangers if the licensee does not know or have reason to know of the conditions or risks involved*.

(Emphasis added.)

Based on the facts presented, the owners of the vacant lot should have known that children, who live so close by, would come onto the premises. The truck-bed liner located on the south bank of the retention pond presented a danger that was not open and obvious

to licensees who went onto the property, as discussed above. Knowing that children could be in peril because of this hidden, dangerous condition, the owners had a duty to warn them of it. All parties agree that there was no fence blocking off the area, and no warning signs had been posted. These facts are sufficient to show that ISC negligently breached its duty of care to Aalyah. The appellants presented a prima facie case of negligence, and the trial court erred in dismissing the claim.

Last, I would like to note that discovery was ongoing at the time the motion to dismiss was filed, and I believe that the appellants were deprived of the opportunity to fully develop the facts of this case when summary judgment was granted.

I respectfully dissent.

MURPHY, J., joins.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; *Robinson Law Firm, L.L.C.*, by: *Jon P. Robinson*; and *Masri Law Firm, L.L.C.*, by: *Ziad Masri*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *Clifford W. Plunkett*, for appellees.